UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF CONNECTICUT

DIANE MOORE                                  CIVIL ACTION NO.:
                                             301CV1018WWE

V.

CAPITAL REGION WORKFORCE                     U.S. DISTRICT COURT
DEVELOPMENT BOARD &                          BRIDGEPORT, CONNECTICUT
FRANCIS J. CHIARAMONTE,
IN HIS OFFICIAL AND
INDIVIDUAL CAPACITY                          JULY 2, 2004


**AFFIDAVIT OF WENDY TORTOMAS**

The undersigned, being duly sworn, says that:

1.  I am over the age of eighteen and understand the obligations of an oath.

2.  I was Plaintiff's direct supervisor at Capital Region Workforce Development
    Board ("CRWDB") during the time period from 1995 through her date of
    termination of March 31, 2000, and observed her job performance on a daily
    basis throughout her employment.

The following are my observations of Plaintiff's work performance:

3.  On December 8, 1998, I gave Plaintiff an assignment to revise lists of the Board
    of Directors' committees, which was needed the following day by noon for a
    meeting which was to take place on December 10, 1998.  I estimated that the
    assignment would take one hour.  On December 9, 1998 Plaintiff had not
    completed the revisions, but I observed her taking an extended lunch break and
    reading a catalogue at her desk.  When I approached Plaintiff about the
    revisions, Plaintiff stated "I know you need the lists for tomorrow's meeting, but
    just because you are in a rush for something doesn't mean I am going to be in a

1

rush." I documented this incident in a memo to Plaintiff's personnel file. (Exhibit A)

4.  On January 18, 2000 at approximately 10:30 AM, I observed Plaintiff reading a magazine at her desk. At approximately 11:15 AM, I returned to Plaintiff's desk and observed her still reading a magazine. I then gave Plaintiff an assignment which she disregarded and placed on her desk, continuing to read her magazine. I documented this incident in Plaintiff's personnel file. (Exhibit B)

5.  On January 24, 2000, I gave Plaintiff an assignment to type a list of board members' names. I estimated the task would take no more than one hour to complete. The next morning I reminded Plaintiff that I needed the list for a meeting at 4:00 PM that day. Plaintiff failed to meet the deadline. I documented this incident in Plaintiff's personnel file. (Exhibit C)

6.  On January 29, 2000, I gave Plaintiff the names of two individuals that needed to be added to the Executive Committee member mailing list. Plaintiff did not complete this task until two weeks had lapsed. I documented this fact in Plaintiff's personnel file. (Exhibit D)

7.  Because I was the senior Administrative Assistant at CRWDB, I received a copy of the police poster identified as Exhibit F from Joan Seiverts, which was provided to the organization as a security precaution and kept as a permanent record.

8.  On February 23, 2000, I had a discussion with Plaintiff regarding a photocopy of a police poster depicting a man known to gain unauthorized access to local businesses. I instructed Plaintiff that if this person entered the office, whoever was at the reception desk should call security immediately. Plaintiff shouted at me and refused to comply with the safety precautions I had instructed her to follow. She claimed that she would not recognize the man pictured and that she was being asked to commit racial profiling. Because of the seriousness of the matter, I gave Plaintiff a written warning pertaining to her behavior and put a copy of the warning in her personnel file. (Exhibit E)

9.  I observed the same police poster that I discussed with Plaintiff. The poster was

of sufficient quality that I could easily make out the distinguishing features of the man pictured on the poster. (Exhibit F)

10. As the supervisor of CRWDB's receptionists, I would ensure that Police Department Posters were distributed to whomever was in charge of the receptionist desk, regardless of that person's race, color, or gender, given that the person at the reception desk was in the best position to observe people entering the office.

11. On March 2, 2000, I produced written documentation of my observations of Plaintiff's behavior concerning the police poster incident, which I placed in her personnel file. (Exhibit E)

12. On March  27, 2000 at 10:00 AM, I gave Plaintiff a mailing task that needed to be completed for the 12:00 PM mail pick-up in order to meet a deadline.  At 11:45 AM, I noticed that Plaintiff had not completed the mailing.  I then assigned the task to another employee, Joan Cusano, who was unable to complete the posting for the 12:00 PM pick-up.  The deadline was not met.  Upon informing Plaintiff that she had not followed my direction regarding this task, Plaintiff responded to me with a memo dated 3/28/00.  This memo was placed in Plaintiff's personnel file. (Exhibit G)

The following are my observations of other employees' complaints regarding Plaintiff:

13. In March of 1996, I was approached by Rick Gibilisco, the CRWDB Director of Administration, regarding Plaintiff's behavior following Mr. Gibilisco's request that Plaintiff confirm the identity of telephone callers before transferring the caller to his voicemail.  Plaintiff refused Mr. Gibilisco's request.  I documented this complaint in Plaintiff's personnel file.  (Exhibit H)

14. On July 30, 1996, I received a complaint from Gregoria Goitia (Gigi) regarding Plaintiff's behavior and propensity for raising her voice when speaking with Ms. Goitia.  I documented this complaint in Plaintiff's personnel file. (Exhibit I)

15. In February of 1999, I was approached by Joan Cusano who complained to me about Plaintiff's behavior.  Ms. Cusano informed me that Plaintiff treated her in a harsh and disrespectful manner.

16. On June 10, 1999, Mr. Chiaramonte and I were approached by a co-tenant of the office suite, Joan Sieverts, who complained of Plaintiff's unpleasant behavior when interacting with her. I documented this complaint in Plaintiff's personnel file. (Exhibit J)

17. On March 20, 2000, I received a written complaint from Audrey Thompson, the CRWDB Group Executive for Planning and Marketing, which complaint I placed in Plaintiff's personnel file. Ms. Thompson made several complaints, one of which was that Plaintiff refused to place copies of documents which required public access in a place where the public could access them. Ms. Thompson, in her written complaint, described Plaintiff as unapproachable, uncooperative, obstructionist and rude. I documented this complaint by placing a copy of Ms. Thompson's letter in Plaintiff's personnel file. (Exhibit K)

18. Ms. Cusano was employed as a part time worker from April 15, 1998 through June 14, 2002. As a part time worker, Ms. Cusano was subject to different expectations than Plaintiff. Ms. Cusano's responsibilities were to perform clerical tasks and to perform the duties of the office receptionist when Plaintiff was taking breaks or lunch periods or otherwise away from the reception desk.

19. I was Ms. Cusano's immediate supervisor; Ms. Cusano's work performance was satisfactory while she was employed at CRWDB. During the time of her employment, I did not receive any formal complaints from employees or others regarding Ms. Cusano's job performance or behavior.

20. I am the custodian of all personnel files, I collect, keep and maintain the personnel files. I wrote the memos and reports that are referred to in this affidavit or received them from a person with knowledge of the facts.

21. Exhibits A-K were compiled and kept as a regular business practice at CRWDB.

22. Exhibits A-K were generated at or near the time of the events referred to in this affidavit. I hereby certify that Exhibits A-K attached hereto are true and accurate photocopies of the original documents.

Dated at Hartford, Connecticut, this 2nd day of July, 2004.

_____
Wendy Tortomas

State of Connecticut        }
                            }    ss.    Hartford        July 2, 2004
County of Hartford          }

    Personally Appeared Wendy Tortomas, Signer and Sealer of the foregoing Instrument, and acknowledged the same to be her free act and deed before me.

_____
Thompson G. Page
Commissioner of the Superior Court