UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DIANE MOORE | CIVIL ACTION NO.: |
| | 301CV1018WWE |
| V. | |
| CAPITAL REGION WORKFORCE | U.S. DISTRICT COURT |
| DEVELOPMENT BOARD & | BRIDGEPORT, CONNECTICUT |
| FRANCIS J. CHIARAMONTE, | |
| IN HIS OFFICIAL AND | |
| INDIVIDUAL CAPACITY | JULY 6, 2004 |

## AFFIDAVIT OF FRANCIS J. CHIARAMONTE

The undersigned, being duly sworn, says:

1. I am over the age of eighteen and understand the obligations of an oath.

2. This affidavit is made with respect to a certain lawsuit brought by Plaintiff, Diane Moore, against Capital Region Workforce Development Board ("CRWDB") and myself.

3. I was the Executive Director of CRWDB during the time that Plaintiff worked at CRWDB, namely between January of 1994 and March 31, 2000.

4. I contacted the City of Hartford in January of 1994 and requested a senior aide from their Senior Aide employment program to work in the CRWDB office. Plaintiff was assigned by the City of Hartford to work as a Senior Aide at CRWDB on a part-time basis from January 1994 until August 15, 1994.

5. On August 15, 1994, I hired Diane Moore as a full-time Administrative Assistant.

6. When Wendy Tortomas was hired on July 31, 1995, she became Plaintiff's direct supervisor, but I retained ultimate authority regarding all personnel matters.

7. The attached job description contains the responsibilities Plaintiff was expected to fulfill while employed at CRWDB. (Exhibit L)

8. When hired, Plaintiff chose to work from 8:00 a.m. to 4:30 p.m., with two 15 minute breaks and 30 minutes for lunch. I documented this arrangement in my letter to Plaintiff's personnel file on October 28, 1996. (Exhibit M)

The following are my observations of Plaintiff's work performance and other incidents of Plaintiff's behavior:

9. On several occasions, I observed Plaintiff taking time to eat her lunch at her desk even after she had taken an extended lunch break. I documented this failure to follow company procedures in a memo which I delivered to Plaintiff on October 28, 1996 and placed in her personnel file. (Exhibit M)

10. On April 13, 1998, I received a written complaint from a Connecticut Bar Foundation ("CBF") job applicant. CBF was a cotenant of the office space in which CRWDB was located, and CBF visitors would often come in contact with Plaintiff in the common reception area. The applicant complained that Plaintiff attempted to dissuade her from working for the CBF and encouraged her to consider applying for work with the Growth Council, another cotenant. The applicant also claimed in her letter that Plaintiff criticized Liz Drummond, the Executive Assistant to the Director of the CBF. The applicant documented her experience with the Plaintiff in a written statement, which I placed in Plaintiff's personnel file. I told Plaintiff that her behavior in this incident was unacceptable, and I placed a note in her file documenting my discussion with her. (Exhibit N)

11. On June 10, 1999, I was approached by Joan Sieverts, an employee of a co-tenant in office space shared with CRWDB, who made a complaint regarding Plaintiff's unpleasant behavior. (Exhibit J)

12. On December 8, 1999, I received a request from Mary Ann Miller, the building security guard, to place food items in the CRWDB refrigerator. I gave her permission to do so. I later received a complaint from Ms. Miller regarding Plaintiff's disapproval concerning Ms. Miller's presence in the office suite. I informed Plaintiff in person and documented such in her personnel file that her behavior was not only unauthorized but inappropriate and that she should not act in such an unprofessional manner. (Exhibit O)

13. On February 8, 2000, I held a meeting with Plaintiff and Ted Hale to address the verbrurary altercation between them which occurred on Februrary 2, 2000. I instructed Mr. Hale to apologize to Plaintiff for his inappropriate behavior, which he did. (Exhibit P)

14. On February 16, 2000, I wrote a letter of reprimand, which I gave to Ted Hale and placed in his personnel file, regarding the above referenced confrontation between Mr. Hale and Plaintiff. (Exhibit P)

15. On March 2, 2000, I issued Plaintiff a written warning for poor performance. I placed this written warning in Plaintiff's personnel file. (Exhibit Q)

16. On March 31, 2000, I terminated Plaintiff for her failure to perform her job duties in a manner acceptable for a CRWDB employee. I put the letter of termination in Plaintiff's personnel file. (Exhibit R)

17. On or about February 23, 1998, I received a copy of a memo sent by Plaintiff to Mr. Michael Doyle, Chairman of the CRWDB Board of Directors. Plaintiff made numerous complaints in the memo regarding her working conditions. She had not discussed the contents of the memo with me prior to directly contacting Mr. Doyle. I advised Plaintiff that contacting the organization's Chairman regarding these matters without first discussing them with her supervisor or with me was unacceptable and in contravention of the organization's established chain of command. I placed a note regarding this incident with Plaintiff in her personnel file on February 26, 1998. (Exhibit S, T)

18. Plaintiff's personnel complaint of February 2, 2000 regarding her confrontation with Ted Hale was sent by Plaintiff to the Chairman of the Board of Directors, Mr. Doyle, and another Board Member, Mr. King. (Exhibit U)

19. On or about February 4, 2000 I received a phone call from Board Member King regarding the incident.

20. On February 8, 2000, I held a meeting with both Plaintiff and Mr. Hale. At that meeting I again informed Plaintiff that she must stay within CRWDB chain of command, and that she cannot report personnel problems to the Board of Directors. I documented this conversation in Plaintiff's personnel file. (Exhibit V)

21. I wrote the memos and reports that are referred to in this affidavit or received them from a person with knowledge of the facts, and all of said exhibits were placed in Plaintiff's personnel file, of which I had ultimate responsibility.

22. Exhibits L-V were compiled and kept as a regular business practice at CRWDB.

23. Exhibits L-V were generated at or near the time of the events referred to in this affidavit. I hereby certify that Exhibits L-V attached hereto are true and accurate photocopies of the original documents.

24. Plaintiff never informed me that Carolyn Griswold spoke to her in a racially derogatory manner.

Dated at Hartford, Connecticut, this 6th day of July 2004.

_____
Francis J. Chiaramonte

| | | | | |
|---|---|---|---|---|
| State of Connecticut | } | | | |
| | } | ss. | Hartford | July 6, 2004 |
| County of Hartford | } | | | |

  Personally Appeared Francis J. Chiaramonte, Signer and Sealer of the foregoing Instrument, and acknowledged the same to be his free act and deed before me.

_____<br>
Commissioner of the Superior Court