UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DIANE MOORE | : | CIVIL ACTION NO.: |
| | : | 301CV1018 (WWE) |
| Plaintiff | : | |
| | : | |
| V. | : | |
| | : | |
| CAPITAL REGION WORKFORCE | : | |
| DEVELOPMENT BOARD AND | : | |
| FRANCIS J. CHIARAMONTE, | : | |
| IN HIS OFFICIAL AND | : | |
| INDIVIDUAL CAPACITY | : | |
| | : | |
| Defendants | : | JANUARY 21, 2005 |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Summary of Argument

Throughout the proceedings in this matter, Defendants have struggled to properly identify the Plaintiff's claims and bases therefore, both from Plaintiff's pleadings as well as from deposing the Plaintiff directly. Despite Plaintiff's disjointed and unsupported claims to the contrary, particularly evident and elicited in "Plaintiff's Response Local Rule 56(a)2 Statement", the parties do not disagree with those material facts alleged in Plaintiff's Complaint, Deposition and Response to Interrogatories or those facts Plaintiff has properly presented and substantiated with admissible evidence. Additionally, Plaintiff has failed to meet her burden of providing specific citations to evidence in the record which would establish those material facts as in dispute.

Furthermore, Plaintiff has failed to establish any prima facie case of racial discrimination or retaliation in the terms and conditions of her employment, in the creation of a hostile work environment, or in terminating her because she has not proffered sufficient direct or circumstantial evidence of at least one essential element of each distinct cause of action.

1

Additionally, Defendants have articulated several legitimate nondiscriminatory reasons why Plaintiff was terminated, which include her poor work performance, an inability to work well with other employees, repeated acts of insubordination and a poor work attitude. Plaintiff has not rebutted Defendants' legitimate articulated reasons for their actions, including terminating her, by producing admissible and pertinent evidence that establishes Defendants' proffered reasons for their actions were more likely than not false and merely a pretext for discriminatory behavior. Therefore, Summary Judgment in favor of the Defendants is proper.

Argument

    A.    <u>There are no material facts before the Court which are in dispute.</u>

Summary judgment is appropriate if the Court finds, after viewing the facts in the light most favorable to the nonmoving party, that there is no genuine issue of material fact pertaining to a given issue and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Pursuant to Local Rule 56, Plaintiff's statements of material facts and denials in her Local Rule 56(a)2 Statement must be followed by specific citations of evidence that support those statements and would be admissible at trial. L.Fed.R.Civ.P. 56(a)3. Additionally, Plaintiff "cannot raise genuine issues of material facts with hearsay statements", *Leak v. United Technologies Corp.,* 81 F.Supp.3d 373, 377 (1999) referring to *Scheiss-Froriep Corp. v. S.S. Finnsailor,* 574 F.2d 123, 126 (2d Cir. 1978) nor can she "defeat a motion for summary judgment with conclusory allegations of discrimination absent any concrete particulars." *Id.* citing *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir. 1985).

In the first section of Plaintiff's 56(a)2 Statement, Plaintiff merely states blanket denials to ten proffered material facts not in dispute, without offering any evidence to support these one-word denials. Plaintiff's Response Local Rule 56(a)2 Statement, ¶¶2,3,4,5,6,8,11,12,13 and 14. In the second section of her 56(a)2 Statement, Plaintiff again states the same denials and

attempts to support them with numerous immaterial and/or unsubstantiated facts, hearsay and conclusory statements, which also do not address the facts as elicited by Defendants.

As one example of the foregoing, Plaintiff submits an unsworn letter she allegedly wrote to a CRWDB board member wherein she claims other administrative assistants were being paid more than she, and that she had not received her performance reviews. Exhibits 1 and 4 to Plaintiff's Memorandum in Opposition.  Plaintiff proffers this, along with a performance evaluation and another unsworn document regarding promotion policies, Exhibits 2, 3 to Pl's. Memo. in Opposition, as sufficient evidence establishing a material dispute of fact concerning Defendants' clear statement that Plaintiff was employed by Defendant on certain dates as a receptionist/administrative assistant. Def's. Material Fact #2.  Plaintiff's exhibits 1, 2 and 4 have not been properly substantiated, contain numerous hearsay statements and offer no support to her assertions that there is a material dispute concerning Defendants' 56(a)1 Statement, Fact #2.

Despite Plaintiff's assertions in her 56(a)2 Statement that she denies eleven of the material facts Defendants previously alleged as not in dispute, Def's. 56(a)1 Statement, facts #2,3,4,5,6,8,11,12,13,14 and 15, Defendants support eight of these statements with specific citations to Plaintiff's own Amended Complaint. Id. #2,3,4,5,6,8,13 and 15.  Additionally, Defendants' material fact #11 admits that Plaintiff was qualified for the position of receptionist/administrative assistant.  Although Plaintiff initially denies this, in her reply to fact #11 Plaintiff's counsel states, "there is no question as to whether plaintiff was qualified to do the job of a receptionist/administrative assistant." Pl's. Local Rule 56(a)2 response, #11. Furthermore, although Plaintiff held the specific job title of Administrative Assistant, Def's. Response to Pl's. Production Request #1[Exhibit A ]; Chiaramonte Affidavit ¶ 5, her performance evaluations listed "answering telephones" as the primary responsibility of her position. Response to Pl's. Production Request #1 [Exhibit B ].  Finally, Plaintiff confirmed in

3

her deposition that regardless of her job title, she performed receptionist duties as well. Pl's. Depo. p.77 ln. 14-18.

Defendants' fact #12 states that in February, 2000, Joan Sieverts distributed a police poster, and then states a description of the poster's contents. Def's. 56(a)1 Statement, fact #12. Despite Plaintiff's denial of fact #12, Plaintiff admits to receiving the poster/flyer from Joan Sieverts in 2000 later in the same response, Pl's. Local Rule 56(a)2 response, #12, as well as in Plaintiff's deposition, Pl's. Depo. p.33 ln.6-14, and she never denies the contents of the poster. Pl's. Local Rule 56(a)2 response, #12. Clearly Plaintiff is not denying fact #12. The remainder of Plaintiff's #12 response merely states unsubstantiated and immaterial allegations all of which are nevertheless not controverted by Defendants.

Finally, Plaintiff cannot later deny Defendants' 56(a)1 Statement, fact #14, which states "Plaintiff is typically the first person that visitors to the CRWDB office would interact with when entering the CRWDB office suite", particularly in light of her prior deposition testimony to the contrary. Pl's. Depo. p.41 ln.11-18. When asked whether there were any other work stations in close proximity to the office entrance other than Plaintiff's, Plaintiff responded "[m]ine was the only one that was close." Id. at ln. 13-14. When next asked if Plaintiff would typically be the first person that people would interact with when they entered the office, Plaintiff responded in the affirmative. Id. at ln. 15-18.

As originally and subsequently declared in Plaintiff's Amended Complaint, Responses to Interrogatories and deposition testimony, Plaintiff bases her claim that Defendants discriminated against her on the basis of her race, color and gender on two specific incidents. One incident involved inappropriate comments from a co-worker, Ted Hale, and the other incident concerned the distribution of a Hartford Police Flyer. When asked in her deposition for the specifics of other incidents of "ongoing complaints of discrimination and different treatment" which she

4

alleged in her complaint, Amend. Complaint ¶¶ 15, 24, 37, Plaintiff merely responded that "I complained to Frank generally about discrimination, about how I was treated by other people in the suite, not only some of the Workforce Development Board but employees from the other three to four agencies that were in the suite. It seemed like everyone was allowed to tell me what to do". Pl's. Depo. p.14 ln.1-6.  When further pressed to describe these complaints, Plaintiff responded that "[a]ctually, the complaint was that I was being told what to do by everybody...that I had to serve as receptionist for the other agencies." Id. at ln.22-25, p.15, ln.1. Plaintiff clearly stated she did not consider acting as a receptionist for other agencies to be an act of discrimination, Pl's. Depo. p.15 ln.7-9, and she never made any specific complaints of discrimination other than the specific incidents referred to above.  Even when asked in her deposition to describe the treatment she received from her immediate supervisor, Wendy Tortomas, Plaintiff responded that "I considered her treatment generally towards me discriminatory". Id. p.71, ln.20-21.

      The first incident concerns a confrontation with employee Ted Hale which occurred on February 2, 2000 and the Defendants' response thereto.  At Plaintiff's deposition on December 23, 2003, Defendants' counsel repeatedly sought to elicit additional facts surrounding the incident with Ted Hale, Depo. p.17 ln. 12-14, p.20 ln.22-23, p.21 ln.1-2, as well as any other incidents which would support Plaintiff's claim of discriminatory treatment. Depo. p.7 ln.22-24, p.8 ln. 3-5, p.9 ln. 16-18, p.13 ln. 7-12, p.15 ln. 22-23, p.24 ln. 7-10, p.41 ln.23-25, p.42 ln. 1-2, p.42 ln.13-15, p.45 ln.25, p.46 ln.1-3.  Additionally, Defendants' counsel repeatedly inquired of Plaintiff at her deposition for additional facts surrounding the other specific incident, namely Plaintiff's receipt of a Hartford Police Flyer issued to Defendant CRWDB's place of business. Depo. p.30 ln.1-2, p.33 ln.6-8, 15, 21, p.35 ln.12-13, p.39 ln.25, p.40 ln.1-3.  Defendants have consistently acknowledged that both of these specific incidents occurred, and Plaintiff has not

offered, through these discovery methods, any additional material facts surrounding these incidents which Defendants dispute.

Neither party disputes any material facts set forth in Plaintiff's complaint, deposition and interrogatory responses nor in Defendants' Rule 56(a)1 Statement of facts. At this stage in the proceedings, Plaintiff cannot allege new facts in her Memorandum in Opposition to Defendants Motion for Summary Judgment nor in her 56(a)2 Statement without accompanying such facts with a proper and sufficient evidentiary foundation in order to establish a genuine issue of material fact. L.Fed.R.Civ.P. 56(a)3. This the Plaintiff has not done.

In conclusion, Defendants maintain that Plaintiff's failure to comply with the Court's rules concerning the appropriate manner to oppose a motion for summary judgment is sufficient alone to accept the Defendants' list of material fact as undisputed. See *Scianna v. McGuire, et al.,* 1996 WL 684400 at 2 (D.Conn. March 21, 1996). Moreover, Defendants do not deny any of the properly presented material facts Plaintiff has put forth. For all of the foregoing reasons, the Court should accept Defendants' list of material facts as undisputed.

  B. <u>Plaintiff has failed to make a sufficient showing on an essential element of each of her alleged prima facie claims</u>.

In order to establish a prima facie claim of racial discrimination under either Title VII or 42 U.S.C 1981, a plaintiff must show that she is a member of a protected class, that she was qualified for her position, that she suffered an adverse employment action and that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Fisher v. Vasser College*, 114 F.3d 1332, 1344 (2d Cir.1997); *Taitt v. Chemical Bank,* 849 F.2d 775 (2d Cir.1988)(establishing that a claim under 42 U.S.C. 1981 is resolved pursuant to the Title VII framework). An adverse employment action has been defined as one which "constitutes a significant change in employment status, such as hiring, firing, failing to promote,

6

reassignment with significantly different responsibilities, or a decision causing a significant change in benefits". *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 2268 (1998). In the instant matter, Plaintiff has alleged two adverse employment actions, that she was not promoted and that she was fired.

Plaintiff has alleged that Defendants failed to promote her to the position which Ms. Tortomas was hired for in 1995, and that such alleged adverse action gave rise to an act of discrimination against her. To establish a prima facie case of failure to promote, plaintiff must demonstrate: (1) that she is a member of a protected class; (2) that she applied for promotional positions; (3) that she was qualified for those positions; and (4) that those positions were filled by someone outside of the protected class. *Holt v. KMI-Continental, Inc.*, 95 F.3d 123, 129 (2d Cir. 1996). It has also been held that a general interest in a position would be insufficient to establish a prima facie case. *Broughton v. Connecticut Student Loan Foundation,* 64 F.Supp.3d 64 (D. Conn., 1999) citing to *Brown v. Coach Stores, Inc.*, 163 F.3d 706 (2d Cir.1998).

Plaintiff testified in her deposition that when she began employment at CRWDB, she was the only employee of CRWDB other than Mr. Chiaramonte, and that she worked for him. Depo. p.78 ln, 15-19. Plaintiff further states she was unhappy when, eleven months after commencing her employment, the Defendants hired Ms. Tortomas, her immediate supervisor, because she thought Ms. Tortomas was stupid. Id. at 78 ln. 20-24. When asked further about the circumstances surrounding Ms. Tortomas' hiring and if she was upset about not being given this position, Plaintiff stated "No. I'm just upset that I wasn't - - it wasn't offered as a common courtesy, that I wasn't given the opportunity to refuse it." Id. at 79, ln. 3-7. Plaintiff has failed to state a prima facie claim of failure to promote because her response establishes that she never applied for the position and therefore did not meet the second prong of the *Holt* analysis. She has also failed to meet the third prong of the analysis in that she has put forth no admissible

7

evidence that she was qualified for this position. The evidence proffered by Plaintiff establishes, at best, that she had a general interest in the position, which is inadequate to establish a prima facie claim.

Finally, although the person hired for the position, Ms. Tortomas, was not a member of the protected class, this alone does not give rise to an inference that the hiring of Ms. Tortomas and not the Plaintiff was motivated by racial animus. For all of the above reasons, Plaintiff has failed to establish a prima facie case based on failure to promote.

Plaintiff's second claim that she suffered an adverse employment action giving rise to an inference of discrimination is centered on her termination. To establish a prima facie case of termination based on race, a plaintiff must show that she is a member of a protected class, that she has suffered an unfavorable employment decision and that she was replaced by someone outside the protected class. *Quaratino v. Tiffany & Co.*, 71 F. 3d 58, 64 (2d. Cir. 1995). Although Plaintiff has satisfied the first two elements, she has not proved nor has she ever alleged that she was replaced by a nonmember of the protected class. Tellingly, Plaintiff never addresses the characteristics, qualifications or class status of the person who replaced her, either in her complaint, deposition or discovery requests.

Additionally, although Plaintiff alleges one incident of an office co-tenant making a racially derogatory comment to her, she does not allege that Defendants knew of this incident or failed to prevent it. Depo. p.15 ln.24-25, p.16 ln.1-4. Furthermore, Defendant Chiaramonte stated that Plaintiff never told him of this incident. Chiaramonte Affidavit, ¶ 24. In *Gonsalves v. J.F. Fredericks Tools Co.,* 964 F.Supp.2d 616 (D.Conn. 1997), this Court found the plaintiff established a prima facie case when there was evidence of racially derogatory comments, management knew of the comments and did nothing to stop them, and Plaintiff had been

8

replaced by a nonmember of the protected class. Id. at 622.  Accordingly, Plaintiff has not met her prima facie burden on her claim relating to her termination.

As previously stated in Defendants' Summary Judgment Memorandum, Plaintiff was hired and fired by the same supervisor, Mr. Chiaramonte, during an employment period which exceeded five and one half years. Chiaramonte Affidavit ¶ 4,5,16.  Similar facts have been held to be significant in determining a party's intent or lack of intent to discriminate.  *Broughton v. Connecticut Student Loan Foundation,* 64 F.Supp.3d 64 (D.Conn.1999); *Evans v. Technologies Applications & Service Co.,* 80 F.3d 954, 959 (4th Cir. 1996).  If Mr. Chiaramonte had wished to discriminate against her, he had plenty of opportunities prior to the two expressed incidents in February, 2000.  Accordingly, Defendant Chiaramonte's behavior does not evince an intent to discriminate against Plaintiff based upon her race.

Based on the foregoing, Plaintiff has failed to properly allege and support the essential elements of her prima facie claims that her termination and failure to be promoted were motivated by Defendants' intent to discriminate against her because of her race.

C. <u>Plaintiff's claims that Defendants discriminated against her and retaliated against her by issuing a written warning and later terminating her have not been properly substantiated and are unfounded because Defendants took such actions for legitimate reasons.</u>

Plaintiff makes one assertion in her complaint that she was retaliated against by Defendants when she stated her "termination was retaliatory and discriminatory.  Similarly situated employees not of Plaintiff's same protected class have not been terminated or placed on time sensitive performance improvement plans..." Amend. Compl. ¶25.  In Plaintiff's deposition, she asserted there was only one employee similarly situated to her, namely Joan Cusano. Depo. p.48 ln.24-25, p.49 ln.1-7.  Plaintiff's counsel later asserts in Plaintiff's Memorandum in Opposition that there were other similarly situated employees to Plaintiff, Amy Holmes,

9

MaryAnn Mahoney and Joan Cusano, but fails to proffer any testimony, affidavits, documents or other admissible evidence to establish same. Additionally, Plaintiff's claim that she was similarly situated to Joan Cusano also fails because there were no job performance, work attitude or insubordination issues concerning this employee, Tortomas affidavit ¶ 19, as there were with Plaintiff. Tortomas affidavit ¶¶ 3-6,8,12. As stated in *Mitchell v. Toledo Hospital,* 964 F.2d 577 (6th Cir. 1992), to prove a disparate treatment case, a plaintiff must show that others engaged in the same conduct which is what caused the adverse employment action against the plaintiff. In the instant matter, Plaintiff has failed to do so.

As previously stated in Defendants' Summary Judgment Memorandum, the circumstances surrounding Ms. Cusano's employment differentiate her substantially from the Plaintiff's status, Depo. p.48 ln.11-13; Tortomas Affidavit ¶18,19, such that the two employees were not similarly situated for purposes of analyzing a disparate treatment claim under Title VII. s*ee Bloom v. Jewish Home for Elderly of Fairfield County, Inc.,* 44 F.Supp.2d 439, 441 (D.Conn.1999). Of particular note, Ms. Cusano had not been the subject of numerous complaints in the workplace concerning her attitude, insubordination and performance. Tortomas Affidavit ¶18,19. Accordingly, Plaintiff's claim of retaliation and racial discrimination arising from Ms. Cusano or any other employee being similarly situated to the Plaintiff must fail.

Plaintiff's only other allegations of retaliation are made much later in Plaintiff's Memorandum in Opposition and have not been properly substantiated. Plaintiff alleges that Defendants retaliated against her for filing a complaint concerning Ted Hale's behavior and for filing complaints directly with various members of the Defendants' Board of Directors. Plaintiff's Memorandum In Opposition p.14,17, 21. After Plaintiff complained to Defendant Chiaramonte about the verbal altercation with Mr. Hale, Mr. Chiaramonte reprimanded Mr. Hale, caused him to apologize to the Plaintiff and documented the incident in Mr. Hale's

personnel file. Chiaramonte Affidavit ¶13,14. Mr. Chiaramonte also documented that he was unaware of any previous incidents of unprofessional behavior exhibited by Mr. Hale. Id. exhibit P. Plaintiff asserted in her deposition that this incident was never resolved, simply because Mr. Hale was not "fired", Depo. p.22 ln.18-22, and further contends that "if Ted Hale was black and I was white, he would have been fired on the spot". Id. at 92 ln.10-12. No disciplinary action was taken against Plaintiff at that time, and she was not retaliated against for filing this warranted complaint.

In 1998, Plaintiff filed complaints concerning delays of her performance review and other work related matters directly with Defendant CRWDB's Board of Directors Chairman without first contacting her direct supervisor, Ms. Tortomas or Mr. Chiaramonte. Chiaramonte Affidavit exhibit S. Mr. Chiaramonte then informed Plaintiff that she must follow the company grievance procedure and lodge any future job related complaints with her direct supervisor or with him before she contacts Board members directly. Id. ¶17. As Plaintiff stated in a memo she allegedly sent directly to the Board Chairman, Mr. Doyle, she did not consider the delay in receiving her performance review to be discriminatory. Id. exhibit S. Despite this previous and reasonable directive from Mr. Chiaramonte, Plaintiff again contacted various Board members directly concerning the "unresolved" complaint against Mr. Hale prior to her meeting with Mr. Chiaramonte regarding same and in contravention of the company's grievance procedure. Id. ¶ 18, exhibits U,V. Despite Plaintiff's misguided characterization of the basis for being given a written warning, such warning arose from a culmination of Plaintiff's unwarranted and unprofessional behavior, including the aforementioned complaints to Board members, and not because of any intent to racially discriminate against the Plaintiff.

Although the timing of the written warning and Plaintiff's termination, relative to the above-stated actions by Plaintiff, could conceivably support a claim of retaliation, Defendants

11

terminated Plaintiff because of her inability to work well with others, Defendants' Summary Judgment Memorandum p.16-17, her insubordinate behavior, Id. at 17-20 and her poor work performance and poor work attitude, Id. at 20-23.  Further supporting Defendants' reasons for taking these actions are several statements contained in Plaintiff's deposition of December 23, 2003, which exemplify Plaintiff's deficient work behavior and uncooperative attitude, which ultimately lead to her termination.  Examples of Plaintiff's statements follow.

Plaintiff and her supervisor, Ms. Tortomas, were engaged in a difficult, unproductive and conflict-ridden relationship that evinces a significant personality conflict between them.  This court has noted that personality conflicts between employees are not the business of the federal courts. *Broughton v. Connecticut Student Loan Foundation,* 64 F.Supp.3d 64, 68 (D.Conn 1999) citing *Vore v. Indiana Bell Tel. Co.,* 32 F.3d 1161, 1162 (7th Cir. 1994).  Since the time Ms. Tortomas became Plaintiff's supervisor, Plaintiff believed Ms. Tortomas was "stupid", Depo. p.78 ln.20-24, and "did not know how to work with other people". Id. at 95 ln.23-24.  Plaintiff also believed that Ms. Tortomas was resentful of Plaintiff's superior knowledge and that she "didn't like the fact that I [Plaintiff] didn't come to her very often to ask her things".  Id. at 100 ln.6-11.  It was difficult for Plaintiff to take instructions from Ms. Tortomas, especially when she believed Ms. Tortomas did not understand how to carry those instructions out herself. Id. at 70 ln.20-22.

Additionally, when asked to describe the arbitrary and discriminatory treatment she received from Ms. Tortomas and others, Id. at 45 ln.25, 46 ln.1-3, Plaintiff stated that "the biggest problem was asking questions about instructions. People seem to think when you ask a question you're refusing to do something.  When I ask questions, I need clarifications, because taking a little bit longer to do something once was better than having to do something eight, ten times, which was usually the case". Id. at 46 ln.25, 47 ln.1-6.  When asked if she had any

12

personality conflicts with Ms. Tortomas, Plaintiff responded that she had many. Id. at 109 ln.18-20. While Plaintiff had continual difficulty working in a cooperative manner with her supervisor, she never claimed that race was a factor with that difficulty.

Plaintiff claims a hostile work environment arose out of a stipulation in the written warning Defendant Chiaramonte gave her on March 2, 2000 to "stay at my desk" during working hours. Id. at 93 ln.5-8. In order to prevail on a hostile work environment claim brought pursuant to Title VII or 42 U.S.C. Section 1981, a plaintiff must 1) make a sufficient showing that the alleged harassment was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and created an abusive work environment, *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367 (1993), and 2) must show that a specific basis exists for imputing to the defendant the conduct that created the hostile work environment. *Broughton v. Connecticut Student Loan Foundation,* 64 F.Supp.3d 64 (1999) citing *Perry v. Ethan Allen, Inc.,* 115 F.3d 143, 149 (2d Cir. 1997).

Plaintiff alleges she literally could not leave her desk, even to perform certain required job tasks as going to the photocopying machine, Id. at 18-21, and therefore Mr. Chiaramonte prevented her from performing her job, Id. at 21-24, and created a hostile working environment. Id. at 5-8. Despite Plaintiff's claim that she could not possibly adhere to all the stipulations in the written warning, the Plaintiff's job duties attached to the warning were essentially the same as they had been for the previous five and one-half years. Chiaramonte affidavit exhibit L. As noted in the job duties list, her "responsibilities require [her] to be at the reception desk during regular business hours except for lunch and break periods and <u>other times when it is essential to be away from the workstation.</u> Id.(emphasis added). Additionally, Plaintiff was required to follow the company complaint procedure, work a consistent 40-hour week, take direction from her supervisor, interact with people professionally and sign up for training classes. Chiaramonte

13

affidavit exhibit Q. Plaintiff cannot claim she was not allowed to leave her desk at all, and therefore this was not sufficiently severe harassment which altered the terms of her employment.

Plaintiff's behavior regarding the Hartford police flyer was extremely unreasonable, uncooperative, irrational and ultimately insubordinate. It is unbelievable that Plaintiff would not recognize an individual depicted in a photograph disseminated by the Hartford Police for the express purpose of identifying this individual should he attempt to enter the defendants' office, where Plaintiff's desk was located at the only entrance to the office suite. Tortomas affidavit exhibit F. Plaintiff claimed the photograph of this African American male was too dark to discern any of the individual's physical features, Depo. p.34 ln.15-16, and the quality of the police issued photo was so indiscernible that she could only make out a mere shape of a human being. Id. at 35 ln.14-17. Regardless of this alleged difficulty, her response to her supervisor's request was extremely unprofessional and insubordinate. Tortomas affidavit ¶8,9. Not until her deposition did Plaintiff claim that perhaps her eyesight was the reason why she could not recognize the individual depicted in the poster which was given to her. Depo. p.38 ln.23-25.

Conclusion

Even if a plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate legitimate non-discriminatory reasons for the termination. *St. Mary's Honor Center v. Hicks*, 509 U.S 502, 507, (1993); *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253 (1981) Once the defendant has articulated its legitimate non-discriminatory reasons, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the supposed legitimate reasons are actually a pretext for discrimination. Id. at 502. Defendants have proffered and properly supported legitimate nondiscriminatory reasons as to why the Plaintiff was terminated, which include poor work performance, inability to work well with other employees, insubordination and a poor work attitude. An employer's reason for termination

14

cannot be proved to be a pretext for discrimination unless it is shown to be false and that discrimination was the real reason. *Quaratino v. Tiffany & Co.,* 71 F.3d 58, 64 (2d Cir.1995).

Plaintiff has failed to prove that any of the multiple instances of Plaintiff's work behavior proffered by Defendants were false and that Defendants were instead discriminating or retaliating against her based on her race when they issued her a written warning or terminated her. Pursuant to *St. Mary's Honor Center v. Hicks,* the Plaintiff bears the burden of proving by a preponderance of the evidence that the Defendants' legitimate reasons are actually a pretext for discrimination. Plaintiff has not met the preponderance of the evidence standard.

The present case would appear to be most analogous to *Sample v. Wal-Mart Stores, Inc.,* 273 F.Supp.2d 185 (D.Conn., Jan.13, 2003), whereby an African American female Plaintiff alleged that her termination was discriminatory and retaliatory in nature, that her Caucasian superiors created a hostile work environment and were allowed to steal time and disregard management directives without fear of discipline, and that the plaintiff was repeatedly disciplined, and finally terminated, for bringing such misconduct to the attention of her supervisors. Id. at 187. Plaintiff, as well as the plaintiff in *Sample,* is undone by her own words, which in this matter are contained in Plaintiff's deposition testimony, whereby she admits to voluminous workplace personality conflicts, acts of insubordination and troubles with her supervisor. Plaintiff does not describe any of these actions as being racially motivated.

Plaintiff's Motion in Opposition to Defendants' Summary Judgment Motion has not established any material facts in dispute, any prima facie cases she has alleged, nor rebutted any of the Defendants' legitimate reasons for the written warning or her termination. A plaintiff, when faced with a motion for summary judgment, cannot rely on attenuated possibilities that a jury would infer discrimination. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-250 (1986). On the contrary, a plaintiff must present "significantly probative" evidence on the issue to avoid

15

summary judgment. Id.  For all of the foregoing reasons contained herein as well as in Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment, Defendants' Motion for Summary Judgment should be granted in its entirety.

    Respectfully submitted,

                              DEFENDANTS,
                              CAPITAL REGION WORKFORCE
                              DEVELOPMENT BOARD, INC.
                              AND FRANCIS J. CHIARAMONTE

                   By: _____
                              Thompson G. Page
                              Attorney for Defendants
                              Law Offices of Thompson Gould Page, LLC
                              942 Main Street, Suite 300
                              Hartford, CT 06103
                              Tel. 860-808-3000; tpage@ctlawyer.com
                              Fed Bar No. ct 11665

                          CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing Defendants' Response to Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment was mailed, postage prepaid, this 21st day of January, 2005 to the following:

Cynthia Jennings, Esq.
The Barrister Law Group
211 State Street
Bridgeport, CT 06604

                              _____
                              Thompson G. Page