```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF CONNECTICUT

DIANE MOORE,                      :    No. 3-01-cv-1018(WWE)
        Plaintiff,                :
                                  :
v.                                :
                                  :
CAPITAL REGION WORKFORCE          :
DEVELOPMENT BOARD and FRANCIS     :
CHIARAMONTE in his official       :
and Individual capacity,          :
        Defendants.               :
```

RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The plaintiff, Diane Moore, claims that the defendants, the Capital Region Workforce Development Board ("CRWDB") and Francis Chiarmonte, discriminated against her on the basis of her race, color, gender and sex in violation of Title VII.[1] Construed most liberally, the complaint alleges claims of disparate treatment, hostile environment, and retaliation. The complaint may also be construed to assert state common law intentional and negligent infliction of emotional distress claims in counts two and three.

The defendants have moved for summary judgment as a matter of law. For the following reasons, defendants' motion will be granted.

### BACKGROUND

Plaintiff and defendants have submitted statements of facts supported by affidavits and exhibits. These submissions reveal the following undisputed facts.

---

[1] The complaint and plaintiff's memorandum in opposition to summary judgment both state that this case is also brought pursuant to 42 U.S.C. § 1983. However, there is no indication that CRWDB is a state actor as required for a section 1983 claim.

Plaintiff Diane Moore is an African-American woman, who was employed by defendant CRWDB as a full-time administrative assistant from August 15, 1994 through March 31, 2000, on which date plaintiff was terminated for failure to perform her duties in a manner acceptable for an employee of CRWDB. At all times relevant to this action, defendant Francis ("Frank) Chiaramonte was the Executive Director of CRWDB.

In July, 1995, Wendy Tortomas, the senior administrative assistant, became plaintiff's direct supervisor at CRWDB. Plaintiff's job duties required her to serve as a receptionist by answering telephone calls, forwarding calls to appropriate staff, greeting visitors, directing visitors to the office or conference rooms as appropriate, and providing backup support to other administrative assistants. Plaintiff was situated in the reception area, and she was generally the first person that a visitor to the CRWDB office would meet.

CRWDB shares office space with other business entities, including the Connecticut Bar Foundation ("CBF") and Business for Downtown Hartford.

Plaintiff's personnel file includes numerous complaints concerning deficiencies in plaintiff's professional conduct and work quality noted by her supervisor Ms. Tortomas, other co-workers, visitors to the CRWDB and its co-tenants, and employees of CRWDB's co-tenants. Among these complaints was one made by Joan Sieverts, an employee of Business for Downtown Hartford.

Prior to her termination, on February 2, 2000, plaintiff

2

indicated to her co-worker Ted Hale, CRWDB's Director of Finance, that, without written authorization, she would not validate visitor parking tickets for individuals attending business meetings with Joan Sieverts. According to the plaintiff, Mr. Hale responded by stating, "I'm not giving you a fucking thing. Just because you don't like the bitch [Joan Sieverts], I'm not going to do all this shit. If you want a memo go to Frank. He's the one who authorized parking in the first place."

On February 4, 2000, plaintiff filed a complaint directly to the CRWDB Board of Directors. On February 8, 2000, defendant Chiaramonte held a meeting to discuss the complaint made by plaintiff against Mr. Hale. At this meeting, Mr. Hale apologized to plaintiff for his inappropriate behavior, and Mr. Chiaramonte issued a written reprimand, which was placed in Mr. Hale's personnel file. Plaintiff indicated that she felt Mr. Hale should have been fired.

On February 21, 2000, plaintiff received from Joan Sieverts a Hartford Police Department poster/flyer warning office tenants that an individual had been making unauthorized entries to various offices in the downtown Hartford area. According to Ms. Tortomas, she instructed plaintiff to deny access to that individual and to call security immediately should he attempt to enter the office at the reception area. Plaintiff claims that she was instructed to "hold" the criminal and to "deny access and call security." Plaintiff indicated to Ms. Tortomas that she would not comply with these instructions, she would not be able to recognize the man in

the picture, and she felt that she was being asked to commit racial profiling.

Thereafter, plaintiff lodged another complaint of discrimination based on this incident.

On March 2, 2000, Ms. Tortomas wrote a memo to plaintiff concerning her behavior on February 21st and placed a copy of it in plaintiff's personnel file.

On March 2, 2000, plaintiff was issued a written warning for poor performance, which warning was placed in her personnel file.

On March 20, 2000, Ms. Tortomas received a written complaint from Audrey Thompson, the CRWDB Group Executive for Planning and Marketing, which complaint asserted that plaintiff had acted in an uncooperative, obstructionist and rude manner. Ms. Thompson's complaint was placed in plaintiff's personnel file.

On March 31, 2000, defendant Chiaramonte terminated plaintiff for her failure to perform her job in a manner acceptable for a CRWDB employee.

This litigation followed with the incidents of February 2 and 21, 2000, forming the bases of plaintiff's Title VII claims.

## DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.

4

2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. American International Group, Inc. v. London American International Corp., 664 F. 2d 348, 351 (2d Cir. 1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). If a nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which he has the burden of proof, then summary judgment is appropriate. Celotex Corp., 477 U.S. at 323. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. Anderson, 477 U.S. at 249.

**Disparate Treatment**

Plaintiff alleges disparate treatment in violation of Title VII based on her race, color, gender and sex based on her lack of promotion within the workplace and her termination.

None of the Title VII allegations may be maintained against defendant Chiarmonte, since Title VII does not impose individual liability. See Tomka v. Seiler Corp., 66 F. 3d 1295, 1313-17 (2d Cir. 1995)(individual liability under Title VII would lead to results not contemplated by Congress).

The Court analyzes plaintiff's disparate treatment claim against CRWDB according to the burden shifting process

5

established in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973) and <u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248, 252-56 (1981).

### Termination

To establish her prima facie claim of disparate treatment based on her termination, the plaintiff must demonstrate that (1) she belongs to a protected class; (2) she was performing her duties satisfactorily; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. Although the plaintiff's initial burden is not onerous, she must show that her termination was not made for legitimate reasons. <u>Thomas v. St. Francis Hospital and Medical Center</u>, 990 F. Supp. 81, 86 (D. Conn. 1998).

If the plaintiff establishes a prima facie case, the defendant must articulate a legitimate, non-discriminatory business reason for the alleged discriminatory action. The plaintiff must then prove by a preponderance of the evidence that the supposed legitimate reason is actually a pretext for discrimination. <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 515 (1993).

For purposes of ruling on this motion, the Court assumes that plaintiff has satisfied the prima facie case.

Defendant has proffered plaintiff's poor work performance as a legitimate business reason for plaintiff's termination. After careful review, the Court finds that plaintiff has failed to

6

demonstrate that defendant's proffered reason is pretextual.  In this instance, the evidence demonstrates that plaintiff was uncooperative and rude on numerous occasions to her fellow workers, visitors and her supervisors.

Plaintiff repeatedly asserts that Ted Hale was treated more favorably than she because the letter of reprimand placed in Ted Hale's personnel file concerning his inappropriate behavior was to be removed from his file within six months if no further similar incidents occurred.  Plaintiff also asserts that white administrative assistants were treated more favorably than she relative to job duties and salary.

A showing that similarly situated employees outside the protected class received more favorable treatment can serve as evidence of pretext, but only if the plaintiff shows that she was "similarly situated in all material respects" to the comparators.  Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000).  Here, the Court cannot draw an inference that plaintiff was treated in a manner disparate from treatment of similarly situated individuals outside the protected class.  Plaintiff submits no evidence relative to the job descriptions or job expectations of the other administrative assistants.  The Court has no information concerning the other administrative assistants' work experience and professional skills.  Further, plaintiff has not shown that Ted Hale or the other administrative assistants had a similar record of complaints made against them or that they had demonstrated on several occasions

7

insubordination and poor work performance. No evidence demonstrates that Ted Hale exhibited inappropriate behavior within six months after his altercation with plaintiff.

Accordingly, summary judgment will enter in defendant's favor on plaintiff's that her termination represents disparate treatment.

<u>Failure to Promote</u>

In support of her failure to promote claim, plaintiff asserts that she was not selected to fill the position of the Executive Assistant, and that she was not moved from the reception area to preferable area of duty.  To make out a prima facie failure to promote claim, plaintiff must show that (1) she is a member of a protected class; (2) she applied for a position for which she was qualified; (3) she was rejected for the position; and (4) the circumstances give rise to an inference that there was a discriminatory motive.  <u>Howley v. Town of Stratford</u>, 217 F.3d 141, 150 (2d Cir.2000).  An exception to the second prong of the prima facie case exists where the plaintiff has indicated to the employer an interest in being promoted to a particular class of positions, but was unaware of the available positions because the employer never posted them.  <u>Mauro v. Southern New England Telecommunications</u>, 208 F.3d 384, 387 (2d Cir. 2000).

Even if the Court finds that plaintiff's case meets the exception to the prima facie requirement as described in <u>Mauro</u>,

8

plaintiff's case still fails. No evidence submitted evinces an inference of discrimination. The Court has no information about how CRWDB conducted the selection process for filling this position, what qualifications were required for an Executive Assistant, or whether Wendy Tortomas and plaintiff had comparable skills, thereby raising an inference of discrimination. Accordingly, the Court finds that plaintiff has failed to make out a prima facie case.

Even assuming that plaintiff can satisfy a prima facie case on her claim that CRWDB impermissibly failed to transfer her to a preferable station of duty as she requested, entry of summary judgment is still appropriate. In her memorandum, plaintiff asserts that her request was denied because CRWDB considered her to be good with the phones. Plaintiff has failed to provide evidence refuting this response as pretext for discrimination. Further, as previously discussed relative to her claim of termination, she has failed to provide evidence showing that the alleged administrative assistant comparators are similarly situated to her with respect to work experience, professional skills, and interpersonal relationships. Accordingly, no evidence raises an inference of discriminatory animus in failing to transfer her to another station.

### Retaliation

In her complaint, plaintiff alleges that her termination was retaliatory. In her opposition to summary judgment, plaintiff asserts that defendants retaliated against her for filing a

9

complaint relative to Ted Hale's behavior and for filing complaints directly with the defendant's Board of Directors.

The same McDonnell Douglas burden shifting analysis applicable to discrimination claims applies equally to claims of retaliation. <u>Jetter v. Knothe Corp.</u>, 324 F.3d 73, 75 (2d Cir. 2003). A prima facie case of retaliation requires plaintiff to show by a preponderance of evidence 1) that she engaged in protected activity, 2) that the employer was aware of the activity, 3) that the employer took adverse action against the plaintiff, and 4) that a causal connection exists between the protected activity and the adverse action. Even if the Court assumes for purposes of this ruling that plaintiff has satisfied the prima facie case, her claim of retaliation still fails. As discussed, she has failed to refute with admissible evidence defendant's legitimate business reason for terminating her based on a record of performance problems. Accordingly, summary judgment will be granted on this count.

<u>Hostile Environment</u>

Plaintiff's complaint of hostile environment is based on her race, color, gender and sex.

A hostile work environment exists in violation of Title VII where the workplace is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. <u>Harris v. Fork Lift Sys., Inc.</u>, 510 U.S. 17, 20 (1993). To prevail on a hostile work

environment claim, the plaintiff must show both 1) that her workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the condition of her employment, and 2) that a specific basis exists for imputing to the employer the conduct that created the hostile environment. Briones v. Runyon, 101 F. 3d 287, 291 (2d Cir. 1996).

Plaintiff supports her claim of hostile environment with evidence concerning Ted Hale's inappropriate behavior toward her, the requirement that she remain at the reception desk as contained in her written warning, and the request that she be vigilant of the individual depicted in the police flyer.  This evidence does not give rise to an inference that CRWDB was an environment permeated with discriminatory intimidation.  Ted Hale's inappropriate behavior contains no indication that his motivation was to insult or intimidate her based on her race, color, gender and sex.  The requirement that she remain at the reception desk except for lunch and break periods or other times when it was essential to be away from the workstation carries no discriminatory inference.  Similarly, the incident concerning the police flyer, even assuming that plaintiff was asked to hold the individual in reception while she called security, does not give rise to an inference of a discriminatory environment. Accordingly, the Court will grant summary judgment on this claim.

### Intentional and Negligent Infliction of Emotional Distress

The Court construes plaintiff's complaint as alleging, in counts two and three, claims based on state common law

intentional and negligent infliction of emotional distress. Having dismissed all of the federal claims, the Court will decline to exercise supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. section 1367(c)(3). Accordingly, these claims are dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, defendants' Motion for Summary Judgment [doc. # 33] is GRANTED.  Summary judgment shall enter in defendants' favor on plaintiff's Title VII allegations as asserted in counts one, two, and three of the complaint.  To the extent that plaintiff's complaint alleges intentional and negligent infliction of emotional distress based on state common law, the Court DISMISSES these claims without prejudice pursuant to 28 U.S.C. section 1367(c)(3).  The clerk is instructed to close this case.

SO ORDERED.

_____/s/_____
Warren W. Eginton
Senior United States District Judge


Dated the 28th  day of February, 2005 in Bridgeport, Connecticut.